FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

PM 3:02

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARCUS MCMULLEN and EMERY MAE )
MCMULLEN, )
)
     Plaintiffs, )
)
v. )     CASE NO. CV417-067
)
CITY OF PORT WENTWORTH GEORGIA, )
OFFICER CHASSITY D. PELLEGRINO, )
SERGEANT BRIAN PHINNEY, and )
CHIEF OF POLICE BRIAN LIBBY, )
)
     Defendants. )
_____ )

## O R D E R

Before the Court are Defendants City of Port
Wentworth, Georgia ("City of Port Wentworth"), Sergeant
Phinney ("Phinney"), and Chief Libby's ("Libby") Motion for
Summary Judgment (Doc. 28) and Defendant Etzel's[1] Motion for
Summary Judgment (Doc. 32). For the following reasons,
Defendants City of Port Wentworth, Phinney, and Libby's
Motion for Summary Judgment (Doc. 28) is **GRANTED** and
Defendant Etzel's Motion for Summary Judgment (Doc. 32) is
**GRANTED**.

---

[1] Defendant Chassity D. Pellegrino has represented in her
Motion for Summary Judgment that she has married since the
incident at issue in this action and her surname is now
Etzel. (Doc. 32 at 1.) The Court will refer to Defendant
Pellegrino by her current surname, Etzel.

This case stems from the arrest of Plaintiffs in April 2015. On April 6, 2015, Defendant Etzel and Defendant Phinney of the City of Port Wentworth Police Department responded to a call involving a reported domestic dispute at the Sai Food Mart convenience store. (Doc. 44 at 1.) Defendants Etzel and Phinney were not provided the names or descriptions of the persons involved in the reported domestic dispute. (Id. at 2.) Defendants Etzel and Phinney arrived on scene and saw Plaintiff Marcus McMullen ("Mr. McMullen") in his car in the store's parking lot, which was parked directly outside the front of the store. (Id.) Plaintiff Emery Mae McMullen ("Mrs. McMullen") and two nephews of Mr. and Mrs. McMullen were inside the convenience store when Defendants Etzel and Phinney arrived on scene. (Id.) Defendant Etzel proceeded directly into the convenience store to investigate the reported domestic dispute and performed a full sweep of the inside of the store. (Id.) Defendant Phinney approached Mr. McMullen and spoke with Mr. McMullen. (Id. at 2-3.) Mr. McMullen stated that Defendant Phinney asked whether he had witnessed the

---

[2] In this Order, the facts are set forth in the light most favorable to Plaintiffs, the non-moving party.

dispute, to which Mr. McMullen responded in the negative.[3] (Id. at 3; Doc. 28, Attach. 6 at 44.) Mr. McMullen then entered the convenience store. (Doc. 44 at 4.) Defendant Phinney entered the convenience store after Mr. McMullen and ordered Mr. McMullen to exit the store. (Id.) During this time, Defendant Etzel observed Mr. McMullen standing with Mrs. McMullen and their nephews near the checkout counter and saw Defendant Phinney was standing by Mr. McMullen. (Doc. 45 at 4.) As Defendant Etzel walked towards the door of the convenience store, she heard Defendant Phinney tell Mr. McMullen "I said outside, c'mon" as Defendant Phinney holds the door open and gestures for Mr. McMullen to leave the store. (Id.) Defendant Etzel approached Mr. McMullen and Defendant Phinney and directed Mr. McMullen to leave the store by telling Mr. McMullen "[h]e [Defendant Phinney] said outside." (Id. at 5.) During the time Defendant Etzel was responding to the domestic

---

[3] Defendants also contend that Defendant Phinney told Mr. McMullen that the officers were on scene to investigate a reported domestic disturbance call and told Mr. McMullen to remain outside the store and that he, Defendant Phinney, would enter the store and bring out Mrs. McMullen and the two nephews. (Doc. 44 at 3.) Because Plaintiffs contest these facts and contend that Mr. McMullen was never told to remain outside the store, the Court does not include these facts in the background of this case or consider them in evaluating the motions for summary judgment.

disturbance call at Sai Food Mart, her body camera was activated and recording.

In the video, Defendant Etzel approaches Mr. McMullen and tells him "[h]e said outside. . . Go." (Doc. 28, Attach. 4 at 8:05-08.) Defendant Etzel, while holding a pen in her left hand, then places her hands on Mr. McMullen. (Id.) Plaintiffs allege that during this exchange, Defendant Etzel "stabbed" Mr. McMullen with her pen. In the video, Defendant Etzel can be seen holding a pen in her left hand when she touches Mr. McMullen. However, at 8:07, the video shows that Defendant Etzel's left hand is spread wide across the left side of Mr. McMullen's back with the pen laying flat against Mr. McMullen's back held in place by Defendant Etzel's palm. (Doc. 28, Attach. 4 at 8:07.) Thus, while this Court credits Mr. McMullen's account that the pen "stabbed" him, the contention that Defendant Etzel used her pen to intentionally stab him is not supported by the body cam video.[4] The video supports the facts that the

---

[4] While this Court must accept the Plaintiffs' facts as true for the purposes of ruling on the motions for summary judgment, "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" Manners v. Cannella, 891 F.3d 959, 967 (11th Cir. 2018) (alteration adopted)

4

pen poking or stabbing Mr. McMullen in the arm was incidental to Defendant Etzel placing her hands on Mr. McMullen to guide him from the convenience store.

After Defendant Etzel directs Mr. McMullen outside, both verbally and with her hands on his body, Mr. McMullen turns around to face her and says "[w]ait a minute." (Doc. 44 at 5.) Officer Etzel draws her taser, gestures towards the open convenience store door, and tells Mr. McMullen "[g]o outside right now. Go." (Id.; Doc. 28, Attach. 4 at 8:09-10.) Defendant Etzel then turns towards Mrs. McMullen and points her hand, holding a pen, at her and says "and you too, don't touch me." (Doc. 28, Attach. 4 at 8:12-14.) Defendant Etzel then faces Mr. McMullen again and tells him "[g]o outside . . . if an officer asks you to go outside, you go outside." (Doc. 44 at 6; Doc. 28, Attach. 4 at 8:14-17.) Mr. McMullen replies "[f]or what?" and Defendant Etzel responds "[c]ause we're investigating something right now and we don't roll up into a food mart and say 'hey, let me talk to you right now.' " (Doc. 28, Attach. 4 at 8:18-25.) Mr. McMullen responds, "I'm not asking to talk to anybody." (Id. at 8:26.) Defendant Etzel points at the door being

---

(quoting Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)).

held open by Defendant Phinney and repeats "[g]o outside right now." (Id. at 8:26-27.) Mr. McMullen tells her "I got my family here with me." Defendant Eztel repeats, while continuing to gesture towards the door with her left hand, "Go outside right now." (Id. at 8:28-29.) A female voice is then heard on the video saying "[y]eah, we're going out." (Id. at 8:30.) Defendant Etzel repeats "Go outside." (Id. at 8:31.) After this instruction, Mr. McMullen turns around to face the checkout counter of the store, putting his back towards Defendant Etzel, and says "[y]ou know what . . . ." (Id. at 8:31-33.)

Plaintiffs contend that Mr. McMullen was attempting to gather his family when he turned his back to Defendant Etzel. (Doc. 44 at 7.) According to Plaintiffs, Defendant Etzel then "forcibly grabs, shoves, and without hesitation, tases Mr. McMullen" and that "Officer Phinney joins in, grabbing Mr. McMullen and slamming him to the ground." (Doc. 45 at 3.) According to Defendants, after Mr. McMullen turns away from Defendant Etzel, Defendant Etzel places her hands on Mr. McMullen to direct him outside after which he turns quickly towards her and "aggressively raised his elbow." (Doc. 44 at 7.) Defendants contend that Defendant Phinney, concerned about Mr. McMullen harming Defendant

Etzel, chose to physically take down Mr. McMullen. (Doc. 32, Attach. 1 at 7).

The video depicts Defendant Etzel approaching Mr. McMullen with the pair coming so close together that the body cam is obscured by Mr. McMullen's shirt. (Doc. 28, Attach. 4 at 8:33-38.) Defendant Etzel touches him and says "go outside before . . . ." (Id.) In quick succession, Mr. McMullen turns towards Defendant Etzel, Defendant Etzel pushes him and then the taser is heard being deployed. (Doc. 28, Attach. 4 at 8:33-38.) Additionally, the Court credits Plaintiffs' account that Mr. McMullen did not aggressively raise his elbow or fist because such facts are not clearly contradicted by the body cam video.

The video goes on to show Defendant Phinney and Mr. McMullen on the floor of the convenience store with Defendant Phinney instructing Defendant Etzel to "cuff him." (Doc. 45 at 10; Doc. 28, Attach. 4 at 8:40-44.) As Defendant Etzel has her hand on Mr. McMullen's arm, who is still lying on the floor, Mrs. McMullen approaches the two and reaches out her arm. (Doc. 45 at 12; Doc. 28, Attach. 4 at 8:45-46.) Defendant Etzel shouts at Mrs. McMullen to "get off me!" (Doc. 44 at 8; Doc. 28, Attach. 4 at 8:47) and Mrs. McMullen then stumbles into a drink container near

the checkout counter (Doc. 28, Attach. 4 at 8:47-48). According to Plaintiffs, Defendant Etzel pushed Mrs. McMullen into the cashier station and Mrs. McMullen never touched Defendant Etzel. However, Defendants deny the contention that Mrs. McMullen did not touch Defendant Etzel. (Doc. 44 at 8.) Mr. McMullen is then handcuffed and Defendant Phinney asks Mr. McMullen if "he was physically hurt" and Mr. McMullen responds in the affirmative. (Id. at 9.) Defendant Phinney calls for emergency medical services to come to the scene and Defendant Etzel orders Mrs. McMullen to go outside the store. (Id.) Once outside, Defendant Etzel approaches Mrs. McMullen and asks her "was there any reason you decided to touch me in there?" (Doc. 44 at 10; Doc. 28, Attach. 4 at 11:43-47.) Mrs. McMullen responds, "[n]o, I just wanted to be with him." (Doc. 44 at 10; Doc. 28, Attach. 4 at 11:50-51.) Defendant Etzel then asks Mrs. McMullen if she had her own phone that she could call someone to come pick up the kids because Mrs. McMullen was going to jail as well. (Doc. 44 at 10.) After being informed that she would be arrested, Mrs. McMullen denies having touched Defendant Etzel and states that she "just wanted to touch him and then you pulled me off." (Doc. 28, Attach. 4 at 12:31-32.) Defendant Etzel then replies that

"[a]nd I did. I pushed you away." (Id. at 12:33-34.) Defendant Etzel then places Mrs. McMullen in handcuffs and escorts her to her police car. (Doc. 44 at 10.) Mr. McMullen was arrested and charged with misdemeanor obstruction of a law enforcement officer and Mrs. McMullen was arrested and charged with misdemeanor obstruction of a law enforcement officer as well as simple battery on a law enforcement officer. (Id. at 11.)

The only other individual defendant, Defendant Libby, was not present at the scene or otherwise directly involved in the arrests of Mr. and Mrs. McMullen. (Id.) At the preliminary hearing held in Municipal Court in Port Wentworth following the incident, a judge found that probable cause existed. (Id.) The charges against Plaintiffs were ultimately dismissed. (Id.)

Based on the events surrounding their arrests, Plaintiffs filed a complaint in this Court. (Doc. 1.) Both Plaintiffs have brought state law claims for aggravated assault and battery, false arrest and imprisonment, and loss of consortium against Defendants Phinney and Etzel, in their individual capacities. (Id.; Doc. 28, Attach. 10 at

1-3.)[5] Plaintiffs have also asserted claims against Defendants City of Port Wentworth, Defendant Etzel, Defendant Phinney, and Defendant Libby pursuant to 42 U.S.C. § 1983 for the "use of improper police procedures, excessive force, and unlawful arrest" contending that Defendants "violated the civil rights of the Plaintiffs under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution."[6] (Id. at 5.)

---

[5] Because suits against officials in their official capacities are in reality suits against the state, Cameron v. Lang, 274 Ga. 122, 126, 549 S.E.2d 341, 346 (2001), the official capacities suits against Defendants Phinney and Etzel would be suits against the City of Port Wentworth. Counsel for Plaintiffs has represented to Defendants' counsel that the only claims asserted against the City of Port Wentworth are federal claims. (Doc. 28, Attach. 10 at 1-3.) Thus, the state law claims against Defendants Phinney and Etzel are against them in their individual capacities.

[6] It is clear how Plaintiffs' claims of excessive force and unlawful arrest fall under the Fourth Amendment. In regard to Plaintiffs' claims of excessive force, "the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, [] are the two primary sources of constitutional protection against physically abusive governmental conduct." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). Likewise, the Fourth Amendment's proscription against unreasonable searches and seizures is the primary source for claims alleging unlawful arrest. See, e.g., Albright v. Oliver, 510 U.S. 266, 274, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994); Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009). Count 3 of the complaint does not otherwise state how Defendants violated the First or Fifth Amendments. Accordingly, the Court evaluates Plaintiffs' § 1983 claims under the Fourth Amendment.

Specifically, the claims against Defendant City of Port Wentworth and Defendant Libby under § 1983 allege that Plaintiffs' constitutional rights violations were caused by these Defendants' "implementation of customs, policies, procedures, and official acts which reflected deliberate indifference" to Plaintiffs' rights. (Id. at 6.) Defendants Phinney, Etzel, and Libby have been sued in their individual and official capacities on the § 1983 claims. (Id. at 1.) Plaintiffs also seek punitive damages. (Id. at 7-8.)

Defendants City of Port Wentworth, Phinney, and Libby have filed a Motion for Summary Judgment. (Doc. 28.) In the motion, these Defendants argue all federal claims against Defendant Phinney are barred by qualified immunity. (Id. at 7-14.) Defendants contend that all federal claims against Defendant Libby fail because Defendant Libby was not personally involved or connected to the alleged constitutional deprivations and, further, that the claims against him are barred by qualified immunity. (Id. at 14-15.) Defendants argue that the federal claims against Defendant City of Port Wentworth fail because Plaintiffs have failed to show any policy, practice, or custom that caused the alleged constitutional violations. (Id. at 16-

11

17.) Defendants also argue that the claims pursuant to the First and Fifth Amendments of the United States Constitution are without merit. (Id. at 17-18.) With regards to the state law claims, Defendants argue that Plaintiffs have asserted state law claims only as against Defendant Phinney, in his individual capacity, and that these claims are barred by official or qualified immunity. (Id. at 18-21.) Defendants finally argue that Plaintiffs' request for punitive damages fails because punitive damages may not be asserted against Defendant City of Port Wentworth, Defendant Libby, in his official capacity, or Defendant Phinney, in his official capacity, and that, because Plaintiffs' underlying claims fail, the request for punitive damages also fails. (Id. at 21-22.) Plaintiffs have responded in opposition to Defendants' motion. (Doc. 41.)

Defendant Etzel also filed a Motion for Summary Judgment. (Doc. 32.) In regards to the federal law claims asserted against her, Defendant Etzel argues that she is entitled to qualified immunity. (Id. at 9-20.) In regards to the state law claims asserted against her, Defendant Etzel argues that the claims are barred by official immunity because there is no evidence in the record of malice or actual intent to injure Mr. or Mrs. McMullen.

(Id. at 20-24.) Plaintiffs have responded in opposition to Defendant Etzel's motion arguing that Defendant Etzel does not have qualified immunity because her actions violated clearly established law and that, with regards to the state law claims, actual malice could be found when viewing the facts of the case. (Doc. 42.)

### STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. <u>DeLong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. <u>Matsushita</u>, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u>, 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory

allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## ANALYSIS

## I. DEFENDANTS CITY OF PORT WENTWORTH, PHINNEY, AND LIBBY'S MOTION FOR SUMMARY JUDGMENT

### A. Plaintiffs' Claims Against Defendant Phinney

Defendants City of Port Wentworth, Phinney, and Libby argue in their motion for summary judgment that Defendant Phinney is entitled to qualified immunity on all of Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983. (Doc. 28 at 7.) In order to be entitled to qualified immunity, the officers first must "establish that they were acting within their discretionary authority during the incident." Manners v. Cannella, 891 F.3d 959, 967 (11th Cir. 2018). If it is shown that the officers acted within their discretionary authority, the burden shifts to the plaintiff(s) to demonstrate that qualified immunity is not appropriate. Id. at 968. Here, Plaintiffs

do not contest Defendant Phinney's assertion that he was exercising his discretionary authority while assisting in an investigation and arrest. (Doc. 41 at 13-14 (arguing that Defendant Phinney is not entitled to qualified immunity because his conduct caused constitutional violations that were clearly established at the time of incident).) Thus, to overcome qualified immunity, the plaintiff(s) must "show the officer's conduct violated a constitutional right," and that right "was clearly established" at the time of the alleged conduct. Saucier v. Katz, 533 U.S. 194, 201, 102 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). We do not have to consider the Saucier prongs in sequential order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). As against Defendant Phinney, Plaintiffs each assert that they suffered two constitutional violations. Plaintiffs also assert state law claims against Defendant Phinney for false arrest, aggravated assault and battery, and loss of consortium.

### 1. Mr. McMullen's 42 U.S.C. § 1983 claims

#### a. Unlawful arrest

Mr. McMullen contends that Defendant Phinney violated his Fourth Amendment right to be free of unreasonable

searches and seizures by subjecting him to an unlawful arrest. "A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause." Cozzi v. City of Birmingham, 892 F.3d 1288, 1293 (11th Cir. 2018), cert. denied sub nom. Thomas v. Cozzi, 139 S. Ct. 395, 202 L. Ed. 2d 289 (2018) (citing Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). However, in the context of § 1983 actions, "an officer may be entitled to qualified immunity even if there was no actual probable cause for the arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause." Id. " 'Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest.' " Id. (quoting Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010)). "Probable cause exists 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Cozzi, 892

F.3d at 1293 (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002)).

Mr. McMullen contends that Defendant Phinney did not have probable cause to arrest him for obstruction because he was only questioning the officers and because his failure to immediately respond to the commands is insufficient grounds to support an obstruction charge. (Doc. 41 at 8-9.) In Georgia, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). "The essential elements of O.C.G.A. § 16-10-24(a) obstructing or hindering law enforcement officers are: that the act constituting obstruction or hindering was knowing and willful and that the officer was lawfully discharging his official duties." <u>Taylor v. State</u>, 349 Ga. App. 185, 186, 825 S.E.2d 552, 554 (2019) (internal citations and quotations omitted).

In this case, Defendants contend that there was at least arguable probable cause to arrest Mr. McMullen for obstruction because he refused to obey the officers' multiple commands to leave the convenience store. (Doc. 28 at 13.) Under Georgia law, refusal to comply with an

officer's commands is sufficient to form the basis of an obstruction charge. Townsend v. Coffee Cty., Ga., 854 F. Supp. 2d 1345, 1358 (S.D. Ga. 2011); Council v. State, 291 Ga. App. 516, 517-18, 662 S.E.2d 291, 293 (2008) ("Officers are authorized, for their own safety, to request that an individual remain in a vehicle until their investigation is complete, and a refusal to comply with an officer's lawful demand to remain in a vehicle will sustain a conviction for misdemeanor obstruction."); Arsenault v. State, 257 Ga. App. 456, 457, 571 S.E.2d 456, 458 (2002); Harris v. State, 276 Ga. App. 234, 236, 622 S.E.2d 905, 907 (2005).

Plaintiffs argue that the "McMullens never refused to leave the store or do anything the officers commanded." (Doc. 41 at 10.) However, the body cam video in this case contradicts this contention. It is undisputed that Mr. McMullen was ordered outside the store at least seven times and that he did not exit the store. (Doc. 28, Attach. 4.) Plaintiffs also argue that "[t]here was no obstruction in his asking why he was being forced to leave . . . and he had actually turned to gather his family in order to leave when he was attacked by Pellegrino [Etzel] and Phinney." (Doc. 41 at 10.) However, this contention is also contradicted by the body cam video. Mr. McMullen did at one

point ask why he was being ordered outside and Defendant Etzel responded "[c]ause we're investigating something right now and we don't roll up into a food mart and say 'hey, let me talk to you right now.' " (Doc. 28, Attach. 4 at 8:18-25.) Mr. McMullen responds, "I'm not asking to talk to anybody." (Id. at 8:26.) Officer Etzel then points towards the open door and repeats the command to go outside. (Id. at 8:26-27.) Defendant Etzel repeats the command to exit the store two more times. (Id. at 8:28-31.) After asking why he was being asked to leave the store and being told that there was an active police investigation on scene, Mr. McMullen was ordered out of the store three times. Thus, even accepting Plaintiffs' facts as true that he was gathering his family when he was tased and arrested for obstruction, he had been directly and explicitly told to leave the store no less than three times after being told that police were there investigating a matter.

Plaintiffs cite to <u>WBY, Inc. v. Dekalb Cty., Ga.</u>, 695 F. App'x 486, 493 (11th Cir. 2017), <u>Harris v. State</u>, 314 Ga. App. 816, 820 (2012), and <u>Reese v. Herbert</u>, 527 F.3d 1253 (11th Cir. 2008) to support their position that there was no probable cause to arrest Mr. McMullen for obstruction because he was merely questioning the officers'

actions and had simply failed to immediately respond to the officers' orders. (Doc. 41 at 8-9.) These cases are insufficient to demonstrate that the law surrounding unlawful arrest was clearly established as of April 6, 2015 to operate as a bar of qualified immunity to Defendant Phinney.

First, Defendants are correct in their contention that WBY, Inc. cannot be used to show that the law surrounding unlawful arrest was "clearly established" as of April 6, 2015 because WBY was decided in 2017. Plaintiffs, however, claim that the Eleventh Circuit reached the "same conclusion" in Reese. (Doc. 41 at 10.) In Reese, the Eleventh Circuit summarized the operative facts surrounding the plaintiff's claims that there was no probable cause to arrest him for obstruction as follows:

> [t]en minutes had elapsed since the alleged aggressor in the domestic violence dispute had been handcuffed and placed in Deputy Geddie's patrol car. Herbert was standing outside the building to prevent others from entering the apartment where Deputy Geddie was interviewing the alleged victim. After approaching Herbert, Reese patiently waited for a few minutes before making his request that the law enforcement vehicles be moved. He then requested to speak with the officer in charge. Throughout this exchange, Reese maintained a calm voice

> and demeanor. Reese did not impede or
> hinder Herbert in the performance of
> his police duties.

527 F.3d at 1272-73. After Reese asked Herbert whether it was necessary for the vehicles to remain at the scene, Herbert told Reese it was necessary for the vehicles to remain and told Reese to leave or he would go to jail. Id. at 1258. Reese turned to walk towards Trooper Geddie's vehicle and Herbert grabbed Reese and arrested him with force. Id. at 1258-59. The Eleventh Circuit, quoting Woodward v. Gray, 241 Ga. App. 847, 527 S.E.2d 595, 599 (2000), noted that an "arrest for obstruction cannot be predicated upon such a refusal to obey 'a command to clear the general area entirely **beyond the zone of police operation.'** " Id. at 1273 (emphasis added).

In Reese, the alleged aggressor in the domestic dispute had been secured in an officer's patrol car and the plaintiff approached an officer that was standing outside the building to prevent individuals from entering the active police scene where another officer was interviewing the alleged victim. Id. at 1272. The officers ordered the plaintiff to leave an area outside of the active scene. Here, Defendant Phinney and Defendant Etzel were called to the convenience store regarding a domestic dispute. (Doc.

28, Attach. 1 at 1.) Defendants Phinney and Etzel did not have a description of the individuals in the dispute and arrived at the scene to investigate. (Id. at 2.) Thus, when Mr. McMullen was ordered from the scene approximately seven times, he was in the "zone of police operation" and no suspect or aggressor had been secured. Furthermore, this Court notes that Woodward has been explicitly disapproved of by the Court of Appeals of Georgia in Stryker v. State, 297 Ga. App. 493, 495 n.1, 677 S.E.2d 680, 682 n.1 (2009), to the extent that it found that misdemeanor obstruction still requires proof of forcible resistance or threat of violence.

In Harris, the Georgia Court of Appeals found that it "[had] found no case upholding an obstruction conviction based solely upon a defendant's act of speaking to, remonstrating with, or even criticizing an officer during the performance of his duties." 314 Ga. App. at 819. Plaintiffs cite Harris to argue that Mr. McMullen's "conduct constitutes mere hesitation to responding in a confusing and threatening experience" and that Mr. McMullen was merely questioning the officers' actions. (Doc. 41 at 8; 10.) As discussed above, the body cam video contradicts these contentions. Furthermore, Harris does not support an

argument that there is no probable cause to arrest an individual for obstruction where the individual refuses to comply with an officer's command. In fact, the Court of Appeals went on to state that "cases upholding misdemeanor obstruction convictions involve words plus something more." Id. at 821. After citing a few cases for support, the Court of Appeals noted in Harris, that "[the plaintiff] did not refuse to comply with an officer's directive or command. No officer ever asked to enter his house. No officer ever asked him to produce the child. [The plaintiff] was not threatening or violent." Id. Thus, Harris is factually distinct from the case at bar and cannot be found to have placed Defendant Phinney on notice that it is impermissible to arrest a person for obstruction under Georgia law for refusing numerous commands from law enforcement to exit the scene of an active police investigation.[7] Therefore, the Court finds that Defendant Phinney had at least arguable probable cause to arrest Mr. McMullen for obstruction and

---

[7] The Court also notes that Harris is a case from the Georgia Court of Appeals. For the purposes of determining whether a right is clearly established, this Court may only look to binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Georgia, the highest court in the state of Georgia. Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015); Lee, 284 F.3d at 1197 n.5 (11th Cir. 2002).

that, accordingly, Defendant Phinney is entitled to qualified immunity on Mr. McMullen's § 1983 claim for unlawful arrest. As a result, Defendants' Motion for Summary Judgment as to Defendant Phinney on Mr. McMullen's § 1983 claim for unlawful arrest is **GRANTED**.

      b. <u>Excessive force</u>

Mr. McMullen alleges that Defendant Phinney used excessive force against him in violation of the Fourth Amendment. (Doc. 1 at 5-6.) However, in their response to Defendants' Motion for Summary Judgment, Plaintiffs assert that "Pellegrino [Etzel] and Phinney inexplicably escalated a routine request to clear an area by using excessive force . . . [u]nder these circumstances, Pellegrino [Etzel] is not entitled to qualified immunity" because "there are genuine disputes of material fact surrounding Pellegrino's conduct." (Doc. 41 at 14.) Despite not specifically stating that Defendant Phinney is not entitled to qualified immunity, Plaintiffs' still maintain that Defendant Phinney used excessive force (Doc. 41 at 11-13) and that his conduct violated clearly established law at the time of the incident (<u>Id.</u> at 13-14).

We must determine whether the facts, taken in the light most favorable to Mr. McMullen, show that Defendant Phinney's conduct violated a constitutional right and, if so, whether this constitutional right was clearly established at the time of the alleged conduct—April 6, 2015. The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, however, the Fourth Amendment protects individuals from the use of excessive force during the arrest or stop. Graham, 490 U.S. at 396, 109 S. Ct. at 1871-72. The gratuitous, unwarranted use of force during the course of an arrest is excessive. Manners, 891 F.3d at 973. The Eleventh Circuit has repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she "uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014).

The determination of whether the force used was reasonable is viewed from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Qualified immunity applies unless the application of the reasonable officer

standard would "inevitably lead every reasonable officer to conclude the force was unlawful." Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000). To balance the reasonableness of the force used, a court must evaluate several factors, including: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest. Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

The first Graham factor, the severity of the crime at issue, weighs in favor of Mr. McMullen. Mr. McMullen was arrested for obstruction after he refused to leave the convenience store despite being told to do so approximately seven times. See Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002) (describing the crimes of disorderly conduct and obstruction as crimes of "minor severity").

The second Graham factor, whether the suspect poses an immediate threat to the safety of the officers or others, weighs in favor of Defendant Phinney. Although we take Plaintiffs' facts as true at this stage in the proceedings, we evaluate those facts from the perspective of a reasonable officer on the scene to determine whether the force used was objectively reasonable. Manners, 891 F.3d at

973. Here, Mr. McMullen refused to obey two officers' multiple commands to leave the scene and then turned away after being told for a seventh time to exit the store. The body cam video shows that there was a scuffle between Defendant Etzel and Mr. McMullen. (Doc. 28, Attach. 4 at 8:33-38.) Defendant Phinney became involved with Mr. McMullen after this physical interaction was initiated and a reasonable officer on the scene could find this physical involvement to be a threat to the safety of the other officer, necessitating his involvement.

The third Graham factor, whether the suspects were actively resisting arrest or attempting to evade arrest, narrowly falls in favor of Defendant Phinney. According to Plaintiffs' facts viewed in light of the body cam video, Mr. McMullen was touched by Defendant Etzel, Mr. McMullen turns towards Defendant Etzel, Defendant Etzel pushes him and then the taser is heard being deployed. (Doc. 28, Attach. 4 at 8:33-38.) "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S. Ct. at 1872. The reasonableness inquiry "must embody allowance for the fact that police officers are often

forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id., 490 U.S. at 396-97, 109 S. Ct. at 1872. Even taking Plaintiffs' facts as true, when Defendant Phinney physically touched Mr. McMullen, he was in a physical interaction with Defendant Etzel. A reasonable officer on the scene in the tense and quickly evolving situation could perceive both the turning towards Defendant Etzel when she placed her hands on him and the ensuing physical interaction as an effort by Mr. McMullen to resist arrest.

In sum, the Court finds that the physical force employed by Defendant Phinney against Mr. McMullen did not violate the Fourth Amendment. Qualified immunity applies unless the application of the reasonable officer standard would "inevitably lead every reasonable officer to conclude the force was unlawful." Nolin, 207 F.3d at 1255. Even construing the evidence in a light most favorable to Mr. McMullen, the circumstances would not lead every reasonable officer to conclude that the force used here was excessive and unlawful. Because this Court finds there was no constitutional violation, this Court does not reach the second Saucier prong of whether the constitutional right

was clearly established. Accordingly, this Court finds that Defendant Phinney is entitled to qualified immunity on Mr. McMullen's § 1983 claim for excessive force. As a result, Defendants' Motion for Summary Judgment as to Defendant Phinney on Mr. McMullen's § 1983 claim for excessive force is **GRANTED**.

### 2. Mrs. McMullen's 42 U.S.C. § 1983 claims

#### a. Unlawful arrest

In their motion for summary judgment, Defendants Phinney, City of Port Wentworth, and Libby argue that, because Defendant Phinney was not the arresting officer of Mrs. McMullen, he should not be liable for her arrest. (Doc. 28, Attach. 2 at 12 n.4.) In the alternative, Defendants argue that there was at least arguable probable cause for arresting Mrs. McMullen and that Defendant Phinney is entitled to qualified immunity. (Id.) In response, Plaintiffs do not directly respond to Defendants' contention that Defendant Phinney was not the arresting officer and that an unlawful arrest claim cannot be maintained against him.

"To establish § 1983 liability, a plaintiff must show 'proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged

constitutional violation, which 'may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.'" Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir. 2010) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). Thus, "unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action," merely being present at the scene is not enough. Id.

Here, the facts, even viewed in the light most favorable to Plaintiffs, do not show that Defendant Phinney participated in Mrs. McMullen's arrest or otherwise had supervisory control over Defendant Etzel. The body cam video shows that Defendant Etzel approached Mrs. McMullen outside of the convenience store and asked her "was there any reason you decided to touch me in there?" (Doc. 44 at 10; Doc. 28, Attach. 4. at 11:43-47.) Mrs. McMullen responded, "[n]o, I just wanted to be with him." (Doc. 44 at 10; Doc. 28, Attach. 4 at 11:50-51.) Defendant Etzel then asked Mrs. McMullen if she had her own phone so that that she could call someone to come pick up the kids because Mrs. McMullen would be going to jail as well. (Doc. 44 at 10.) After being informed that she would be arrested,

Mrs. McMullen denied having touched Defendant Etzel and stated that she "just wanted to touch him and then you pulled me off." (Doc. 28, Attach. 4 at 12:31-32.) Defendant Etzel then replied that "[a]nd I did. I pushed you away." (Id. at 12:33-34.) Defendant Etzel then placed Mrs. McMullen in handcuffs and escorted her to her police car. (Doc. 44 at 10.) Additionally, Mrs. McMullen stated in her deposition that it was not Defendant Phinney who arrested her. (Doc. 28, Attach. 8 at 38:22-24.)

Defendant Phinney was not present when Defendant Eztel was talking with Mrs. McMullen outside the store and chose to arrest her. Further, there has been no allegations that Defendant Phinney had supervisory control over Defendant Etzel or that, even if he did, he directed or ordered Defendant Etzel to arrest Mrs. McMullen. The Court finds that Plaintiffs have failed to demonstrate that Defendant Phinney was sufficiently involved with Mrs. McMullen's arrest so as to support a claim pursuant to 42 U.S.C. § 1983. Defendants' motion for summary judgment as to Mrs. McMullen's § 1983 claim for unlawful arrest against Defendant Phinney is **GRANTED**.

### b. Excessive force

In regards to Mrs. McMullen's § 1983 claim for excessive force, Defendants Phinney, City of Port Wentworth, and Libby argue that Defendant Phinney is entitled to qualified immunity as "Phinney did not apply any force, much less excessive force, against Mrs. McMullen—meaning he necessarily did not violate her constitutional rights." (Doc. 28, Attach. 2 at 10.) There is no evidence in the record that Defendant Phinney touched or applied any force at all to Mrs. McMullen. In their response brief addressing the alleged excessive force by Defendant Phinney, Plaintiffs do not discuss any force applied by Defendant Phinney on Mrs. McMullen. (See Doc. 41 at 11-14.) Accordingly, the Court finds that Plaintiffs have conceded that that Mrs. McMullen does not have a cause of action pursuant to 42 U.S.C. § 1983 against Defendant Phinney for excessive force. As a result, Defendants' Motion for Summary Judgment as to Defendant Phinney on Mrs. McMullen's § 1983 claim for excessive force is **GRANTED**.

### 3. Plaintiffs' state law claims

Defendants contend that qualified or official immunity bars all of Plaintiffs' state law claims against Defendant Phinney in his individual capacity. (Doc. 28 at 19.) In

response, Plaintiffs contend that "[a] reasonable jury could find that Phinney and Pellegrino acted with actual malice or intent to injure by using extreme force against the McMullens because the facts, when viewed most favorably to the plaintiffs, show they posed no threat of criminal conduct" (Doc. 41 at 17) and that, with regards to the false arrest claims, malice may be inferred from the total lack of probable cause to arrest (Id. at 18). This Court first notes that, as addressed above, Defendant Phinney did not touch Mrs. McMullen, nor did he arrest her. Thus, to the extent Mrs. McMullen asserts state law claims for false arrest and assault and battery as against Defendant Phinney, these claims are **DISMISSED**.

Mr. McMullen has asserted state law claims against Defendant Phinney for false arrest and aggravated assault and battery. (Doc. 1 at 4-5.) Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or an intent to injure. Cameron v. Lang, 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001); Williams v. Pauley, 331 Ga. App. 129, 130, 768 S.E.2d 546, 547 (2015). Plaintiffs do not dispute Defendants' contention that Defendants Phinney and Etzel's actions at

issue were discretionary. (See Doc. 41 at 17-18.) Actual malice requires "a deliberate intention to do an unlawful act." Adams v. Hazelwood, 271 Ga. 414, 414, 520 S.E.2d 896, 898 (1999)). Actual malice cannot be implied from the circumstances, but must be alleged by the plaintiff and supported by evidence in the record. See Watkins v. Latif, 323 Ga. App. 306, 311, 744 S.E.2d 860, 863 (2013).

Here, Plaintiffs failed to allege in their complaint that Defendant Phinney acted with malice or intent to injure them in their state law claims for assault and battery and false arrest. (Doc. 1 at 1-8.) In response to Defendants' motion for summary judgment, Plaintiffs only argue that "[a] reasonable jury could find that Phinney and Pellegrino acted with actual malice or intent to injure by using extreme force against the McMullens because the facts, when viewed most favorably to the plaintiffs, show they posed no threat of criminal conduct." (Doc. 41 at 17.) This falls short of the requirement to show actual malice or actual intent to injure. Plaintiffs have pointed to no evidence that Defendant Phinney committed the acts alleged with actual malice. Nor have Plaintiffs cited to any evidence in the record that Defendant Phinney had actual intent to injure Plaintiffs.

To the extent that Plaintiffs seek to rely on Kidd v. Coates, 271 Ga. 33, 518 S.E.2d 124, 125 (Ga. 1999), to argue that the force used by Defendant Phinney was committed intentionally and without justification and that, therefore, Defendant Phinney acted solely with the tortious actual intent to cause injury, this Court finds this reliance misplaced. The Georgia Supreme Court has defined the phrase "actual intent to cause injury" to mean "an **actual intent to cause harm** to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." Kidd, 271 Ga. at 33 (emphasis added) (internal citations and quotations omitted). Applying this definition, the Georgia Supreme Court found that if an officer shoots another in self-defense, he "does not act with the tortious intent to harm another, but does so for the non-tortious purpose of defending himself." Id. Thus, if the officers "shot [decedent] intentionally and without justification, then they acted solely with the tortious 'actual intent to cause injury,' " however, if the officers "shot [the decedent] in self-defense, then they had no actual tortious intent to harm him, but acted only with the justifiable intent which

occurs in every case of self-defense." Id. The focus in Kidd is on the officer's intent in effectuating the force. The Georgia Supreme Court found that, where an officer is using force in self-defense, he had no "actual tortious intent to harm," but instead acted with the "justifiable intent" to "use force as is reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony." Kidd, 271 Ga. at 33. Here, Plaintiffs have not alleged that Defendant Phinney's force was accomplished with an actual intent to cause harm and have not cited to anything in the record to show that Defendant Phinney had such an intent or that he acted without any justification for the force. A general statement that the facts of the case demonstrate that the defendants acted with malice and with an intent to injure is insufficient to satisfy the "demanding standard" of showing that the defendant officers acted with actual malice. Baker v. Clements, 760 F. App'x 954, 958–59 (11th Cir. 2019); see also Hart v. Logan, 664 F. App'x 857, 864 (11th Cir. 2016) (stating that the Eleventh Circuit has noted "that Georgia's actual malice standard is higher than what is required to make out a Fourth Amendment violation.").

Plaintiffs also contend that, in regards to the false arrest claims, that actual malice may be inferred from a total lack of probable case. (Doc. 41 at 18.) However, under Georgia law, the fact "that an officer's decision to arrest may be 'misguided,' 'mistaken,' 'flawed,' or unsupported by probable cause is not enough to overcome official immunity." Croland v. City of Atlanta, No. 19-10312, 2019 WL 3244983, at *6 (11th Cir. July 19, 2019). An officer may be unentitled to summary judgment on official immunity grounds where "sufficient evidence exists that -- at the time of an arrest -- the officer had **actual subjective knowledge** that no crime was committed and, thus, acted with a deliberate intent to break the law." Id. (emphasis in original) (collecting Georgia cases). See also Bateast v. Dekalb Cty., Ga., 258 Ga. App. 131, 132, 572 S.E.2d 756, 758 (2002) (finding that, under the plaintiff's version of the facts, the officers proceeded with the arrest "despite their knowledge that she had not committed the crimes" she was accused of and that, therefore, the officers "deliberately intend[ed] to do a wrongful act.") Here, Plaintiffs have cited to no direct evidence that Defendant Phinney had actual knowledge that Mr. McMullen had committed no crime at the time of the arrest. Rather,

as discussed above, there was at least arguable probable cause that he had committed the misdemeanor crime of obstruction. Accordingly, Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' state law claims against Defendant Phinney are **DISMISSED.**[8]

### B. Plaintiffs' Claims Against Defendant Libby

Defendants' contend that the 42 U.S.C. § 1983 claims against Defendant Libby must be dismissed because Plaintiffs have failed to demonstrate that Defendant Libby had any personal involvement in the incident or that there is any direct causal connection between his actions and any alleged constitutional deprivations. (Doc. 28, Attach. 2 at 14-15.) In the alternative, Defendants contend that the claims against Defendant Libby are barred by qualified immunity. (Id. at 15.) In response, Plaintiffs argue that Defendant Libby may be found liable as he was "a policymaker for Port Wentworth," and, therefore, "his ratification and approval of Phinney and [Etzel's] actions are chargeable to the municipality as evidence of Port Wentworth's policies and customs." (Doc. 41 at 15.)

---

[8] As Plaintiffs' claims for loss of consortium are derivative of their state law claims for false arrest and aggravated assault and battery, which fail, Plaintiffs' claims for loss of consortium against Defendant Phinney are also **DISMISSED.**

Plaintiffs argue that Defendant Libby and Defendant City of Port Wentworth's knowledge of Defendant Etzel's misconduct at both the Savannah Chatham County Metropolitan Police Department and the City of Port Wentworth Police Department creates a question of fact as to whether Defendant Libby and Defendant City of Port Wentworth "made a pattern practice, or custom of ignoring the regular, egregious misconduct of Officer [Etzel]." (Id. at 16.)

The history that Plaintiffs reference is set out as follows. Defendant Etzel was previously employed as an officer at the Savannah Chatham County Metropolitan Police Department ("SCMPD"). (Doc. 33, Attach. 3 at 18.) Defendant Etzel, while employed with SCMPD, testified that she deployed a taser on a handcuffed suspect who was "try[ing] to head butt other officers." (Id. at 34.) Defendant Etzel also testified that she was aware, at the time the tasing occurred, that tasing a handcuffed suspect was against SCMPD policy. (Id. at 42.) Defendant Etzel was transferred from the Crime Suppression Unit back to patrol and her taser was taken away for some period of time. (Id. at 49; 51.) In July 2013, Defendant Etzel was referred to psychological counseling. (Id. at 53.) According to an e-mail between Defendant Etzel's supervisor, Captain Reilley,

and the counselor, the counseling was to address some behavioral issues at work due to numerous citizen complaints. (Id. at 54.) Additionally, Defendant Eztel was arrested in October 2013 for battery after a physical altercation with her then-husband. (Id. at 70-72.) Following her arrest, Defendant Etzel was suspended and placed on administrative leave. (Id. at 72; Doc. 41, Attach. 3 at 7.)

When Defendant Libby was considering Defendant Etzel for a position with the Port Wentworth Police Department, he was aware that she had resigned from the SCMPD and was under investigation. (Doc. 28, Attach. 11 at 31.) Defendant Libby received and reviewed her personnel file and the police reports. (Id. at 35.) Defendant Libby extended the offer of employment to Defendant Etzel while criminal charges were still pending, however, these charges were nolle prossed before she began work. (Doc. 33, Attach. 3 at 90.) In April of 2014, Defendant Etzel received a reprimand for insubordination regarding an order about clocking in and out. (Id. at 98). In November of 2014, Defendant Etzel received a written warning for taking unscheduled paid time off. (Id. at 104-105.) Approximately a month later, in December, Defendant Etzel was approached by a corporal who

informally reprimanded her for driving her patrol car at 98 MPH while not under dispatch. (Id. at 107; Doc. 28, Attach. 11 at 87.) However, Defendant Etzel and the corporal later got into a disagreement about the incident and her insubordination was documented. (Doc. 28, Attach. 11 at 87.) Chief Libby disagreed with a recommendation that Defendant Etzel be terminated over these incidents. (Id. at 67.) However, Defendant Etzel was suspended for fifteen days (Doc. 33, Attach. 3 at 113) and placed on a twelve-month probationary period in January of 2015 and informed that violation of departmental policy would result in termination. (Doc. 28, Attach. 11 at 68). A few days after she was placed on probation, Defendant Etzel was involved in an at-fault car crash when she was responding to a call. (Id. at 69-70.) Defendant Etzel was not terminated at that time. (Id.) Defendant Etzel resigned in October 2015 after she sent a text message to the husband of one of her friends saying, "I should have shot you when I had the chance." (Doc. 33, Attach. 3 at 141-142.)

Plaintiffs contend that these incidents show the "regular, egregious misconduct" of Defendant Etzel and that Defendant Libby's failure to correct these issues render Defendant Libby liable for Defendant Etzel's constitutional

violations. Defendants, however, argue that Plaintiffs only offer up one instance of prior constitutional deprivations of excessive force and false arrest and that the incident, the tasing of a woman in handcuffs, did not occur while Defendant Etzel was employed by the City of Port Wentworth Police Department. (Doc. 49 at 8.) Defendants argue that Plaintiffs have, therefore, failed to show that the deprivations that constitute widespread abuse were "obvious, flagrant, rampant, and of continued duration" rather than simply "isolated occurrences." (Id.)

The Court agrees with Defendants. Supervisor liability under § 1983 occurs

> when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d

667, 671 (11th Cir. 1990)). The causal connection may also be established if the supervisor's " 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.' " Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003)).

While Defendant Etzel's employment record may demonstrate that she was not a model employee, the reprimands she received while at the City of Port Wentworth Police Department were for insubordination or for violations of policies that did not concern excessive force or arrest procedures. The Court finds that one incident involving the use of force, which occurred prior to her employment at the City of Port Wentworth Police Department, does not rise to the level of "widespread abuse" that would put Defendant Libby on notice of the need to correct the alleged deprivation so as to establish a causal connection between Defendant Libby's supervisory role and the alleged constitutional deprivations committed by Defendant Etzel. See Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248,

1267 (11th Cir. 2010) (finding two complaints of sexual harassment prior to the plaintiff's sexual assault did not rise to conduct that was "obvious, flagrant, rampant, and of continued duration"); Hawk v. Klaetsch, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents [of excessive force] over the span of nearly five years can constitute frequent, widespread, or rampant abuse.").

Moreover, even if the one prior instance was enough to place Defendant Libby on notice that he needed to correct the alleged deprivation, the supervisor must have also "fail[ed] to do so." Brown, 906 F.2d at 671. In this case, the prior incident occurred while Defendant Etzel was with the SCMPD. When asked whether the fact that SCMPD "removed her [Defendant Etzel's] tase privileges and demoted her because of her use of force" would matter to Defendant Libby, he testified that "[w]ell, it would make me ensure that I trained her properly if I gave her one, which I did when she came to work for me." (Doc. 28, Attach. 11 at 29.) He stated that Defendant Etzel was sent to Savannah Technical College Police Academy and "went through taser training by their instructions and certified and signed off by Georgia POST Council." (Id.) Plaintiffs have offered no

evidence that this training was insufficient or deficient. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to the 42 U.S.C. § 1983 claims against Defendant Libby. As a result, Defendant Libby is **DISMISSED** from this action.

### C. Plaintiffs' Claims Against Defendant City of Port Wentworth

Defendants contend that Plaintiffs' 42 U.S.C. § 1983 claims against Defendant City of Port Wentworth fail as a matter of law because Plaintiffs have failed to produce evidence of a " 'persistent and widespread practice' of the use of excessive force or unlawful arrest by officers of the Port Wentworth Police Department." (Doc. 28, Attach. 2 at 17.) Defendants further contend that Plaintiffs have failed to produce any evidence of a persistent and widespread practice of improper hiring, training, or retention. (Id.) In response, Plaintiffs advance the same arguments that they made with respect to Defendant Libby. In essence, Plaintiffs contend that Defendant Libby and Defendant City of Port Wentworth's knowledge of Defendant Etzel's misconduct at both the Savannah Chatham County Metropolitan Police Department and the City of Port Wentworth Police Department creates a question of fact as

to whether Defendant Libby and Defendant City of Port Wentworth "made a pattern practice, or custom of ignoring the regular, egregious misconduct of Officer [Etzel]." (Doc. 41 at 16.)

To impose § 1983 liability on a municipality, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986).

Plaintiffs contend that Defendant City of Port Wentworth's knowledge of Defendant Etzel's prior misconduct at the SCMPD and their failure to take action, despite her continued infractions at the City of Port Wentworth Police Department, constituted a policy of ignoring the "regular,

egregious misconduct" of Defendant Etzel. (Doc. 41 at 16.) However, for the same reasons addressed above, this Court finds this argument inadequate to maintain municipal liability under § 1983.

Plaintiffs have cited to only one instance of alleged excessive force committed by either Defendant Etzel or Defendant Phinney before the incident at issue in this case. Plaintiffs have not cited to any other evidence that the City of Port Wentworth had a "policy or custom" of excessive force. Indeed, as pointed out by Defendants, the one past incident of excessive force did not occur while Defendant Etzel was employed by the City of Port Wentworth Police Department. It appears that Plaintiffs are contending that the "policy or custom" here is simply "ignoring" the misconduct of Defendant Etzel and that, presumably, had Defendant City of Port Wentworth not done so, Defendant Etzel would have received "additional training, supervision, and oversight." (Doc. 41 at 16.) Setting aside the fact that the "misconduct" Defendant Etzel engaged in while employed by the City of Port Wentworth did not involve allegations of excessive force or unlawful arrest, the deposition testimony of Defendant Etzel and Defendant Libby, as well as the facts recited by

Plaintiffs in their response, do not demonstrate that the misconduct was "ignored." Plaintiffs' response in opposition to the motion for summary judgment states that "[Etzel] was **issued a written warning** for violating Port Wentworth's paid time off policy," and she was "**issued another written warning** for operating her patrol car at 98 MPH in a 55 MPH zone while not under dispatch." (Doc. 41 at 6 (emphasis added).) Defendant Etzel was ultimately suspended for fifteen days and placed on a twelve-month probationary period and was ordered to complete "critical task and decision making training." (Id.) Thus, it appears that Defendant City of Port Wentworth actually did take actions in response to Defendant Etzel's misconduct.

Moreover, Plaintiffs must still show that this "ignoring" misconduct by officers was a widespread practice at the City of Port Wentworth Police Department. "Normally random acts or isolated incidents are insufficient to establish a custom or policy." Depew, 787 F.2d at 1499. At the bare minimum, Plaintiffs have only shown that Defendant City of Port Wentworth had isolated incidents of not punishing Defendant Etzel for insubordination and other infractions in the manner that Plaintiffs believed to be sufficient. In essence, Plaintiffs have failed to produce

evidence that Defendant City of Port Wentworth had a policy or custom that caused Plaintiffs to be subject to excessive force and unlawful arrest. Defendants' Motion for Summary Judgment is **GRANTED** and Defendant City of Port Wentworth is **DISMISSED** from this action.

### D. Plaintiffs' Claims pursuant to the First and Fifth Amendments of the United States Constitution

Defendants argue that Plaintiffs' complaint provided no facts regarding their First and Fifth Amendment claims or explain how Defendants violated such rights and, therefore, these claims must be dismissed. (Doc. 28 at 18.) Plaintiffs do not address this portion of Defendants' motion for summary judgment in their response. Accordingly, the Court finds that Plaintiffs have abandoned their claims pursuant to the First and Fifth Amendments of the United States Constitution. Gore v. Jacobs Eng'g Grp., 706 F. App'x 981, 985-86 (11th Cir. 2017); Local Rule 7.5. As a result, Defendants' Motion for Summary Judgment (Doc. 28) with regards to Plaintiffs' First and Fifth Amendment claims is **GRANTED**.

### E. Plaintiffs' Claims for Punitive Damages

Defendants contend that Plaintiffs' request for punitive damages fails because the underlying claims fail.

(Doc. 28 at 21.) In the alternative, Defendants argue that punitive damages may not be awarded against Defendants City of Port Wentworth, Libby, in his official capacity, or Phinney, in his official capacity, because a governmental entity cannot be held liable for punitive damages. (Id.) In response, Plaintiffs contend that their request for punitive damages is not extinguished because their underlying claims survive summary judgment. (Doc. 41 at 19.) Plaintiffs do not address Defendants' contention that punitive damages cannot be assessed against Defendant City of Port Wentworth or Defendants Libby and Phinney, in their official capacities. (Id.)

Although it is not clear from the complaint, Plaintiffs' briefing suggests that they seek punitive damages under all of their asserted claims. However, as this Court has dismissed Plaintiffs' § 1983 claims against Defendants City of Port Wentworth, Phinney, and Libby as well as Plaintiffs' state law claims against Defendant Phinney, any derivative claims for punitive damages must be dismissed. See Lewis v. Meredith Corp., 293 Ga. App. 747, 750, 667 S.E.2d 716, 719 (2008) ("Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails."); Butler v. Ga. Dep't of

Corr., No. 6:18-CV-170, 2018 WL 6729647, at *7 (S.D. Ga. Dec. 21, 2018). In conclusion, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 28) and Defendants Phinney, the City of Port Wentworth, and Libby are **DISMISSED** from this suit.

## II. DEFENDANT ETZEL'S MOTION FOR SUMMARY JUDGMENT

### A. Mr. McMullen's 42 U.S.C. § 1983 Claims Against Defendant Etzel

#### 1. Unlawful arrest

Defendant Etzel contends in her motion for summary judgment that she had probable cause to arrest Mr. McMullen for obstruction under O.C.G.A. § 16-10-24. (Doc. 32, Attach. 1 at 11.) Defendant Etzel also contends that she is entitled to qualified immunity on Plaintiffs' claims for false arrest because there was at least arguable probable cause to arrest Mr. McMullen for obstruction because he refused to obey the officers' multiple commands to leave the convenience store. (Id. at 13.)

Under Georgia law, refusal to comply with an officer's commands is sufficient to form the basis of an obstruction charge. Townsend, 854 F. Supp. 2d at 1358; Council, 291 Ga. App. at 517-18, 662 S.E.2d at 293 ("Officers are authorized, for their own safety, to request that an

individual remain in a vehicle until their investigation is complete, and a refusal to comply with an officer's lawful demand to remain in a vehicle will sustain a conviction for misdemeanor obstruction."); Arsenault, 257 Ga. App. at 457, 571 S.E.2d at 458; Harris, 276 Ga. App. at 236, 622 S.E.2d at 907. In response to Defendant Etzel's motion for summary judgment, Plaintiffs advance the same arguments made in response to Defendants Phinney, Libby, and City of Port Wentworth's motion for summary judgment with regards to the arrest of Mr. McMullen and whether Defendant Phinney was entitled to qualified immunity. For the same reasons as set forth above, the Court finds that Defendant Etzel is also entitled to qualified immunity on Mr. McMullen's § 1983 claims for unlawful arrest. See supra Part I(A)(1)(a). Accordingly, Defendant Etzel's motion for summary judgment (Doc. 32) is **GRANTED** and Mr. McMullen's § 1983 claims for unlawful arrest are **DISMISSED**.

### 2. Excessive force

Defendant Etzel contends that she is entitled to qualified immunity on Mr. McMullen's claims of excessive force under the Fourth Amendment because the force used was reasonable and because Plaintiffs will be unable to show that the law "clearly established" that the force Defendant

Etzel used was unconstitutional and excessive. (Doc. 32, Attach. 1 at 14-20.) In response, Plaintiffs maintain that Defendant Etzel used objectively unreasonable force on Mr. McMullen when she tased him and cites to Fils v. City of Aventura, 647 F.3d 1272 (11th Cir. 2011) and Brand v. Casal, 877 F.3d 1253, 1264 (11th Cir. 2017) to show that Defendant Etzel's actions violated clearly established law. (Doc. 42 at 11-14.)

Even assuming a constitutional violation under the first prong of the Saucier analysis, Plaintiffs cannot show that the contours of the right were so clearly established in this context that it would "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. at 2156. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. A party may show that the law is clearly established by pointing to a controlling and materially similar case that declares the officer's conduct unlawful. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000). If there is no controlling materially similar case, a party may also overcome qualified immunity by demonstrating that " 'the

official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw.' " Id. (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)).

In regards to taser use, the United States Court of Appeals for the Eleventh Circuit has held that "in a 'difficult, tense and uncertain situation' the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force." Zivojinovich v. Barner, 525 F.3d 1059, 1073 (11th Cir. 2008) (quoting Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004)). Thus, " 'where a suspect appears hostile, belligerent, and uncooperative, use of a taser might be preferable to a physical struggle causing serious harm to the suspect or the officer.' " Smith v. LePage, 834 F.3d 1285, 1294 (11th Cir. 2016) (quoting Fils, 647 F.3d at 1290). However, "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." Fils, 647 F.3d at 1289.

Plaintiffs argue that Fils gave sufficient notice to Defendant Etzel that her conduct violated the Fourth Amendment.[9] (Doc. 42 at 11-14.) This Court disagrees. While Fils shares similarities with this case, the Court finds that there are material differences that preclude this Court from finding that Fils sufficiently placed Defendant Etzel on notice that her taser use was unconstitutional.

According to the plaintiff in Fils, he was "merely having a private conversation before [the officer] approached him, taser drawn" and that when he saw the taser "he put his hands in the air and took a step away from [the officer]."[10] 647 F.3d at 1289. The court observed that "because [the officer] issued no warnings or directives to move, [the plaintiff] clearly did not disobey any orders." Id. The Eleventh Circuit stated that "[the plaintiff] was tased even though he committed at most a minor offense; he

---

[9] Plaintiffs also cite to Brand v. Casal, 877 F.3d 1253, 1264 (11th Cir. 2017). However, the opinion in Brand has been vacated. Moreover, Brand was decided in 2017, and the operative events in this case occurred on April 6, 2015, therefore, Brand cannot be used to demonstrate that the law surrounding unlawful arrest was clearly established as of April 6, 2015 to operate as a bar of qualified immunity to Defendant Etzel.

[10] Fils involves claims of excessive force by two plaintiffs. However, because the force alleged here involves the use of a taser, the Court recites the facts in Fils for plaintiff Nemours Maurice who was also tased.

did not resist arrest; he did not threaten anyone; and he did not disobey any instructions (for none were given)." Id. The court found that these facts were sufficiently similar to Priester v. City of Riviera Beach, Fla., 208 F.3d 919 (11th Cir. 2000) and Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002) to place the officers on notice that their conduct was unlawful. Id.

Like the plaintiff in Fils, Mr. McMullen also was accused of committing a minor offense, did not threaten anyone, and, under Plaintiffs' version of the facts, was not hostile or aggressive. However, unlike the plaintiff in Fils who saw the taser, placed his hands in the air and took a step away from the officer, here the body cam video clearly shows that Mr. McMullen spoke with Defendant Etzel and Defendant Phinney and received orders to leave the store, saw that Defendant Etzel had drawn her taser, received additional orders to leave and was uncooperative, and then turned away from her. Thus, unlike the plaintiff in Fils, Mr. McMullen had received and ignored orders to leave the store and actively turned away from officers after being told again to leave the store before being tased. The Court finds that these circumstances are materially different from Fils.

The question, therefore, is whether it would be clear to every reasonable officer, even in the absence of case law, that the force used here—tasing an unsecured individual once who refuses to obey officers' commands—was excessive under the circumstances. Ultimately, the Court cannot find that every officer would find the use of a single taser in this instance to be a violation of the United States Constitution, particularly in light of Draper v. Reynolds, 369 F.3d 1270, 1272 (11th Cir. 2004), and the persuasive opinion of Anthony v. Coffee Cty., 579 F. App'x 760, 761 (11th Cir. 2014).

In Draper, the Eleventh Circuit found the use of a single taser in effectuating arrest was not excessive under the Fourth Amendment. 369 F.3d at 1278. The plaintiff was speaking with the officer behind the plaintiff's truck and the video camera in the patrol car recorded the actions that follow. Id. at 1273. The plaintiff immediately began shouting and complaining about the officer's flashlight, the officer calmly asked for the plaintiff's driver's license, but the plaintiff continued to complain. During the encounter, the plaintiff "was belligerent, gestured animatedly, continuously paced, appeared very excited, and spoke loudly." Id. The officer repeatedly asked the

plaintiff to stop yelling and "informed [the plaintiff] that he would be taken to jail if he continued to yell." Id. The officer asked plaintiff for other information and the plaintiff walked towards his truck and then loudly accused the officer of harassing him. Id. The plaintiff handed his license to the officer and began walking back towards the truck when the officer told him again that he needed certain other information. Id. The plaintiff did not go retrieve the information but instead walked back to the officer and accused him again of harassment. Id. The officer asked for the third time for the requested information which was not obeyed. The officer asked again for the information, which was not obeyed, and then tased the plaintiff after asking for the fifth time. Id.

The court noted that "[f]rom the time [the plaintiff] met [the officer] at the back of the truck, [the plaintiff] was hostile, belligerent, and uncooperative." 369 F.3d at 1278. The court summarized that "[the plaintiff] used profanity, moved around and paced in agitation, and repeatedly yelled at [the officer]." Id. The court found that, under the facts presented, there was a reasonable need for some use of force in the arrest and that starting with a verbal arrest command accompanied by physical

handcuffing could have escalated the situation into a physical struggle. Id.

Here, like the plaintiff in Draper, Mr. McMullen did not comply with Defendant Etzel's verbal commands and was uncooperative when she was ordering him to exit the store. Though there are some factual dissimilarities, namely that Mr. McMullen was not yelling, cursing or acting aggressive towards the officers, Draper has been widely cited by the Eleventh Circuit for the proposition that a single taser use on an uncooperative suspect who refused to follow verbal commands is permissible. Chaney v. City of Orlando, FL, 291 F. App'x 238, 244 n.3 (11th Cir. 2008) ("[W]e have held that use of a Taser to encourage compliance or to gain control over a potentially violent situation is permissible."); Barfield v. Rambosk, 641 F. App'x 845, 848 (11th Cir. 2015) (citing Draper and summarizing the case as "holding that use of a taser to effectuate arrest did not constitute excessive force when the suspect repeatedly refused to comply with the officer's verbal commands").

In Anthony, the Eleventh Circuit found the use of a single taser on an off-duty officer who was going to his mother-in-law's house to check on her was not excessive force. 579 F. App'x at 765. The plaintiff, an off-duty

Georgia State Patrol officer, went to check on his mother-in-law after learning that a large fight had broken out on her street. Id. at 762. He was not dressed in any clothing identifying himself as law enforcement and was in a car with no law enforcement markings when he arrived on the street. Id. He spoke with two officers, identified himself as law enforcement, and was permitted access to the street. Id. As he was driving down the street, defendant Thomason pointed his flashlight into the car and the plaintiff told him to get the light out of his eyes. Id. Defendant Thomason walked to the driver's side of the car and instructed the plaintiff to exit the vehicle. The plaintiff complied and "started to inform Thomason that he was there to check on family" when defendant Thomason started yelling " 'You don't tell me to get nothing out of your eyes.' " Anthony, 579 F. App'x at 762. The two were standing close together and defendant Thomason's voice was loud enough to get the attention of another officer, defendant Hudson. Id. Defendant Thomason instructed the plaintiff to turn around with his hands behind his back and the plaintiff refused. Id. At this point, defendant Hudson was standing behind the plaintiff with his taser drawn. Defendant Thomason then reached up to touch the plaintiff and the plaintiff "raised

his arms to chest height and pushed himself away." Id. Then, without issuing any warning, defendant Hudson deployed his taser and the plaintiff was shocked a single time. Id.

The Eleventh Circuit affirmed the grant of qualified immunity to defendant Hudson. Id. at 765. Citing Draper, the court stated "[a]lthough [the plaintiff] arguably was not belligerent, he was uncooperative, refusing Thomason's command. And although [the plaintiff] argues that the officer could not have been in fear of injury, we again do not view this in hindsight. The video shows the close contact and the escalating nature of the incident." Id. at 766. In sum, the court found that the single shock was not excessive. In Anthony, the plaintiff did not obey one command and raised his arms and pushed himself away from the officer while in close proximity to the officer. Here, Mr. McMullen was also uncooperative and refused to obey numerous commands to exit the store and finally turned away from Defendant Etzel after being instructed again to exit the store. Additionally, like the plaintiff and defendant officer in Anthony who were close together in a tense situation, Defendant Etzel and Mr. McMullen were close together when she touched him to lead him from the store,

after which Mr. McMullen turned towards Defendant Etzel and the taser was deployed.

The Court cannot find that, under the facts of Draper and Anthony, Defendant Etzel had fair notice that using a taser once on an uncooperative individual who refused numerous verbal commands was clearly unlawful under the Fourth Amendment or that this conduct is of the type that would "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002) (internal citations and quotations omitted). Accordingly, Plaintiffs have failed to carry their burden of establishing that Defendant Etzel's actions—even if excessive—violated clearly established law. Therefore, the Court finds that Defendant Etzel is entitled to qualified immunity as she was not on notice that using a taser once on an uncooperative individual who refused numerous verbal commands was clearly unlawful under the Fourth Amendment.[11]

---

[11] The Court also addresses Mr. McMullen's claim that he was stabbed with a pen by Defendant Etzel. It is not clear to the Court whether Plaintiffs contend that this is a discrete claim of excessive force or whether Plaintiffs identify this incident to explain why Mr. McMullen's movements did not pose a threat of danger to Defendants Phinney and Etzel. (See Doc. 42 at 12-13 (arguing that,

B. Mrs. McMullen's 42 U.S.C. § 1983 Claims Against Defendant Etzel

1. Unlawful arrest

Defendant Etzel contends in her motion for summary judgment that she had probable cause to arrest Mrs. McMullen for obstruction under O.C.G.A. § 16-10-24. (Doc. 32, Attach. 1 at 11.) Defendant Etzel also contends that she is entitled to qualified immunity on Plaintiffs' claims for false arrest. (Id.) Specifically, Defendant Etzel argues that she had probable cause to arrest Mrs. McMullen

---

under the second Graham factor, Mr. McMullen did not pose an immediate threat to the safety of the officers because "any movement of Mr. McMullen's arm occurred reflexively as a result of [Etzel] shoving him in the back without warning, and stabbing at him with a pen in the process.").) To the extent that Plaintiffs allege this force as a discrete claim, the Court finds that this force is, at most, de minimis. As discussed above, the video evidence does not support a factual finding that Defendant Etzel intentionally stabbed Mr. McMullen with the pen. The video supports the facts that the pen poking or stabbing Mr. McMullen in the arm was incidental to Defendant Etzel placing her hands on Mr. McMullen to guide him from the convenience store. The Eleventh Circuit has repeatedly ruled that gratuitous use of force when a suspect is not resisting arrest constitutes excessive force. Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). De minimis force, however, will not support a claim of excessive force. Saunders, 766 F.3d at 1270 (citation and internal quotation marks omitted). The Court finds that the incidental force of being poked or stabbed with a pen that was in an officer's hand as she went to guide him from a store is not the "gratuitous and excessive" force that the Fourth Amendment bars.

for obstruction because "the video shows that Mrs. McMullen advanced upon Etzel as she was trying to secure Mr. McMullen, startling Etzel by approaching from behind and rapidly reaching toward Etzel." (Id.) In response, Plaintiffs disagree that these facts gave Defendant Etzel probable cause to arrest Mrs. McMullen and further state that there is a "material dispute of fact as to whether Mrs. McMullen grabbed [Etzel]." (Doc. 42 at 8; 10.)

A defendant who asserts qualified immunity bears the initial burden of showing that he was acting within the scope of his discretionary authority when the alleged constitutional violation occurred. Gates v. Khokhar, 884 F.3d 1290, 1297 (11th Cir. 2018), cert. denied, 139 S. Ct. 807, 202 L. Ed. 2d 575 (2019). If the defendant makes the required showing, the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that "(1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." Id. Here, Plaintiffs do not dispute that Defendant Etzel was acting in her discretionary authority when she arrested Mrs. McMullen on April 6, 2015. (Doc. 42 at 7-10.) Thus, Plaintiffs must show that Defendant Etzel's

arrest of Mrs. McMullen violated her constitutional right and that this right was clearly established at the time of the arrest.

In regards to the arrest of Mrs. McMullen, Plaintiffs contend that she was arrested without probable cause and, therefore, her Fourth Amendment rights were violated. (Doc. 42 at 8.) However, most of Plaintiffs' response to Defendant Etzel's motion for summary judgment appears to focus on whether there was probable cause to arrest Mr. McMullen. (See Id. at 10 (presenting the same cases and arguments that were raised in response to Defendants Phinney, Libby, and the City of Port Wentworth's motion for summary judgment regarding the arrest of Mr. McMullen and, further, concluding this section with a statement that "[a]t worst, Mr. McMullen's conduct constitutes mere hesitation . . .").) Plaintiffs do, however, contend that "there is a material dispute of fact as to whether Mrs. McMullen grabbed (or attempted to grab) Pellegrino while she was tasing Mr. Mullen [sic]." (Id. at 10.) However, Defendant Etzel's motion for summary judgment does not rely on any alleged touching by Mrs. McMullen and rather contends that there was probable cause to arrest Mrs. McMullen for obstruction because "the video shows that Mrs.

McMullen advanced upon Etzel as she was trying to secure Mr. McMullen, startling Etzel by approaching from behind and rapidly reaching toward Etzel." (Doc. 32, Attach. 1 at 11.) In a footnote to that sentence, Defendant Etzel emphasizes that the Court "must accept as true Mrs. McMullen's claim that she did not touch Etzel," but that "under either set of facts, probable cause existed." (Id.) Instead of arguing the merits of whether there was probable cause to arrest Mrs. McMullen for obstruction for approaching an arresting officer from behind and reaching towards, but not touching, the officer while the officer was engaged with a suspect, Plaintiffs reiterate that there is a material dispute of fact as to whether Mrs. McMullen touched Defendant Etzel. Defendant Etzel argues that Plaintiffs' failure to directly address the matter means that Plaintiffs have essentially conceded the argument regarding probable cause. (Doc. 50 at 13.) However, because Plaintiffs still generally contend that Defendant Etzel lacked probable cause to arrest Mrs. McMullen, this Court will undertake the qualified immunity analysis.

First, Plaintiffs must show that Mrs. McMullen suffered a constitutional violation when she was arrested. It is true that "[a] warrantless arrest is constitutional

under the Fourth Amendment only when it is made with probable cause." Cozzi, 892 F.3d at 1293. "Probable cause exists 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Id. (quoting Lee, 284 F.3d at 1195). This is an objective standard which asks "whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." Lee, 284 F.3d at 1195. However, in the context of § 1983 actions, "an officer may be entitled to qualified immunity even if there was no actual probable cause for the arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause." Id. " 'Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest.' " Id. (quoting Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010)).

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Defendant Etzel had at

least arguable probable cause to arrest Mrs. McMullen for obstruction under O.C.G.A. § 16-10-24. In Georgia, "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). Under Georgia law, while "words alone can constitute obstruction," an obstruction conviction does not lie when based "solely upon a defendant's act of speaking to, remonstrating with, or even criticizing an officer during the performance of his duties." Harris, 314 Ga. App. at 820, 726 S.E.2d at 458. Rather, there must usually be "words plus something more." Id. at 821. The "something more" can be the defendant's " 'refus[al] to comply with an officer's directive or command' or the defendant's 'threatening or violent' behavior." WBY, Inc., 695 F. App'x at 493 (quoting Harris, 314 Ga. App. at 821). A person "may commit obstruction where he knowingly and willfully hinders an officer in investigating an offense committed by another." Sprinkles v. State, 227 Ga. App. 112, 113, 488 S.E.2d 492, 494 (1997) (citing Wagner v. State, 206 Ga. App. 180, 182, 424 S.E.2d 861, 863 (1992)).

While the question of whether "evidence in a particular case establishes that the actions taken hindered or obstructed the officer making the arrest is for the trier of fact to decide," Weidmann v. State, 222 Ga. App. 796, 797, 476 S.E.2d 18, 20 (1996), for the purposes of determining whether the officer is entitled to qualified immunity, courts " ' look only to whether a reasonable officer, knowing what [Defendants] knew at the time, objectively could have believed probable cause existed.' " Gates, 884 F.3d at 1301 (quoting Brown, 608 F.3d at 736). Here, two officers were actively engaged in securing an individual and were attempting to effectuate arrest when Mrs. McMullen approached Defendant Etzel from behind and reached out towards Defendant Etzel and Mr. McMullen. When Defendant Etzel saw this conduct, she pushed Mrs. McMullen away from herself.[12] Given these facts, a reasonable officer could have inferred these actions as an attempt to prevent

---

[12] While Defendant Etzel contends that Mrs. McMullen was intending to grab her and did in fact touch her before Defendant Etzel pulled away, this Court takes Plaintiffs' facts as true for evaluating the motion for summary judgment. Thus, this Court finds the facts to be that Mrs. McMullen was behind Defendant Etzel while Defendant Etzel was engaged in securing Mr. McMullen, that Mrs. McMullen approached Defendant Etzel and Mr. McMullen, and that she reached her hand out towards Defendant Etzel and Mr. McMullen. (Doc. 45 at 12-13; Doc. 28, Attach. 4 at 8:45-48.)

or interfere with the officers' actions in effectuating an arrest and securing an individual. See Gates, 884 F.3d at 1301 (finding that under the circumstances a reasonable officer could "reasonably have interpreted" Plaintiff's conduct as a gesture to intimidate under O.C.G.A. § 16-11-38(a)). Plaintiffs stated in their response that the reason Mrs. McMullen "stepped toward her husband was because she thought the taser was a real gun, and was trying to reach him and be with him, fearing he would be killed." (Doc. 42 at 10-11.) Mrs. McMullen acknowledges that she approached Defendant Etzel and Mr. McMullen in an effort to reach Mr. McMullen-all of which occurred when Defendant Phinney and Defendant Etzel were securing Mr. McMullen. In this Court's opinion, this acknowledgement supports the finding that a reasonable officer on the scene could interpret Mrs. McMullen's conduct as an attempt to interject herself into the officers' ongoing efforts to secure an individual. Thus, Defendant Etzel had at least arguable probable cause to believe that Mrs. McMullen—as she moved toward her as she was engaged with Mr. McMullen and in the act of securing him—was committing or about to commit an offense by interfering with the arrest of Mr. McMullen and, thus,

hindering the efforts of Defendant Etzel and Defendant Phinney.

Moreover, even if Mrs. McMullen had presented sufficient facts to allege a violation of a constitutional right, Plaintiffs have not shown that such right was clearly established at the time of the arrest. "The qualified immunity defense focuses on whether the law provided [the officer] with 'fair warning' that his conduct violated the Fourth Amendment." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1144 (11th Cir. 2007). The "fair warning" of the unconstitutionality of the alleged conduct can be derived from "(1) the obvious clarity of constitutional or statutory language; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not fairly distinguishable." Eloy v. Guillot, 289 F. App'x 339, 346 (11th Cir. 2008). Specifically, "the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff **under the particular circumstances Defendants confronted.**" Gates, 884 F.3d at 1303 (emphasis

in original). Again, the Court notes that Plaintiffs' response in opposition to Defendant Etzel's motion to dismiss focuses primarily on the arrest of Mr. McMullen. (Doc. 42 at 8-10.) Plaintiffs have not provided, and the Court has not found, any existing law that clearly established the unlawfulness of an arrest under the circumstances present here. See Id. Because the Court finds that there was at least arguable probable cause to arrest Mrs. McMullen for obstruction pursuant to O.C.G.A. § 16-10-24(a), the Court need not consider whether there was probable cause to arrest for the battery charge pursuant to O.C.G.A. § 16-5-23(a). See generally Skop, 485 F.3d at 1138 (finding that probable cause or arguable probable cause to arrest the plaintiff for either of the charged offenses is sufficient to establish that the officer is entitled to qualified immunity); Wilkerson v. Seymour, 736 F.3d 974, 979 (11th Cir. 2013) (stating that arguable probable cause to arrest for some offense must exist in order for officers to assert qualified immunity from suit); Reid v. Henry Cty., Ga., 568 F. App'x 745, 749 n.1 (11th Cir. 2014). Accordingly, Defendant Etzel's motion for summary judgment (Doc. 32) is **GRANTED** and Mrs. McMullen's § 1983 claims for unlawful arrest are **DISMISSED**.

## 2. Excessive force

In regards to any claims of excessive force by Mrs. McMullen, Defendant Etzel first contends in her motion for summary judgment that it is "unclear from the McMullens' Complaint whether they are attempting to make a claim for excessive force on behalf of Mrs. McMullen." (Doc. 32, Attach. 1 at 14.) However, to the extent that such a claim has been made, Defendant Etzel argues that the claim fails because the use of force was de minimis and, therefore, does not subject Defendant Etzel to liability. (Id.) Defendant Etzel claims that she is entitled to qualified immunity on Plaintiffs' excessive force claims. (Id. at 19-20.) In response, Plaintiffs contend that Defendant Etzel's conduct and force against both Mr. McMullen and Mrs. McMullen was objectively unreasonable under Graham v. Connor, 490 90 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). (Doc. 42 at 11-14.) Plaintiffs also argue that Defendant Etzel is not entitled to qualified immunity. (Id. at 14-15.)

The Court agrees with Defendant Etzel that the force used against Mrs. McMullen was de minimis force. The law of this circuit provides that "the application of de minimis force, without more, will not support a claim for excessive

force in violation of the Fourth Amendment." Nolin, 207 F.3d at 1257. Here, while the crime at issue was a minor offense, Mrs. McMullen was only pushed away after she approached Defendant Etzel and Mr. McMullen from behind while Defendant Etzel was engaged in securing Mr. McMullen and reached her hand out towards Defendant Etzel and Mr. McMullen. (Doc. 45 at 12-13; Doc. 28, Attach. 4 at 8:45-48.) A reasonable officer on the scene in the tense situation could perceive this as a threat to her safety. Additionally, the video shows that Mrs. McMullen, at most, was pushed away and fell into or stumbled against displays at or near the register. (Doc. 28, Attach. 4 at 8:45-48.) While the extent of the injury is not the focus of the de minimis force inquiry, the Court notes that Plaintiffs do not cite to any evidence in the record that Mrs. McMullen suffered any injury from this push. The force used here, one push away from the officer and the arrestee, and the injury inflicted, if any, are both minimal. Additionally, the Eleventh Circuit has found this type of force to be de minimis. McCall v. Crosthwait, 336 F. App'x 871, 872-73 (11th Cir. 2009) ("We have repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a violation of the Fourth

Amendment, even where the arrestee was handcuffed and no further force was necessary.").

The Eleventh Circuit has found much more significant force to be de minimis force. See Gomez v. United States, 601 F. App'x 841, 850-51 (11th Cir. 2015) (finding the force used to be de minimis where the unhandcuffed plaintiff was allegedly grabbed by the neck, choked, and slammed against the side of the vehicle after plaintiff unintentionally bumped into the officer); Croom v. Balkwill, 645 F.3d 1240, 1245 (11th Cir. 2011) (finding the use of force involving an officer allegedly pushing the plaintiff to the ground and holding her on the ground for up to ten minutes by placing her foot on plaintiff's back to be de minimis); Nolin, 207 F.3d at 1257 (holding that the force used was de minimis where the plaintiff was allegedly grabbed from behind by the shoulder and wrist, thrown against a van, kneed in the back, and had his head pushed into the side of the van).

Accordingly, the Court finds that the force used here by Defendant Etzel was de minimis, and Mrs. McMullen's Fourth Amendment right to be free from excessive force at the hands of law enforcement was not violated. As a result, Defendant Etzel's motion for summary judgment is **GRANTED**

and Mrs. McMullen's §1983 claim of excessive force against Defendant Etzel is **DISMISSED**.

C. <u>Plaintiffs' State Law Claims Against Defendant Etzel</u>

Defendant Etzel contends that the state law claims for false arrest and assault and battery asserted by Plaintiffs fail as a matter of law and that, moreover, she is entitled to official immunity on the claims. (Doc. 32, Attach. 1 at 20.) In response, Plaintiffs acknowledge that official immunity can be overcome by a showing of actual malice. (Doc. 42 at 16.) Plaintiffs, however, contend that "[a] reasonable jury could find that [Etzel] acted with actual malice or intent to injure by using extreme force against the McMullens because the facts, when viewed most favorably to the plaintiffs, show they posed no threat of criminal conduct" and that, with regards to the false arrest claims, that malice may be inferred from the total lack of probable cause to arrest. (<u>Id.</u>)

Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or an intent to injure. <u>Cameron</u>, 274 Ga. at 123; <u>Williams</u>, 331 Ga. App. at 130, 768 S.E.2d at 547. Plaintiffs do not

contend that Defendant Etzel's actions at issue were not discretionary. (See Doc. 42 at 16.) Thus, to overcome official immunity, Plaintiffs must show that Defendant Etzel acted with actual malice. Actual malice requires "a deliberate intention to do an unlawful act." Adams, 271 Ga. at 414, 520 S.E.2d at 898. Actual malice cannot be implied from the circumstances, but must be alleged by the plaintiff and supported by evidence in the record. See Watkins, 323 Ga. App. at 311, 744 S.E.2d at 863; Selvy v. Morrison, 292 Ga. App. 702, 704, 665 S.E.2d 401, 405 (2008) ("Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others.")

Here, Plaintiffs failed to allege in their complaint that Defendant Etzel acted with malice or intent to injure them in their state law claims for assault and battery and false arrest. (Doc. 1 at 1-8.) In response to Defendant's motion for summary judgment, Plaintiffs only argue that "[a] reasonable jury could find that [Defendant Etzel] acted with actual malice or intent to injure by using extreme force against the McMullens because the facts, when viewed most favorably to the plaintiffs, show they posed no threat of criminal conduct." (Doc. 42 at 16.) Plaintiffs have pointed to no evidence that Defendant Etzel committed

the acts alleged with actual malice. Nor have Plaintiffs cited to any evidence in the record that Defendant Etzel had actual intent to injure Plaintiffs. This falls short of the requirement to show actual malice or actual intent to injure. See Bashir v. Rockdale Cty., Ga., 445 F.3d 1323, 1333 (11th Cir. 2006) (finding that while the "record supports the conclusion the deputies acted unreasonably and violated [the plaintiff's] Fourth Amendment rights, [the plaintiff] has not sustained his burden of demonstrating the existence of a genuine issue of fact that the deputies possessed 'a deliberate intention to do wrong' sufficient to satisfy the actual malice standard."); Baker, 760 F. App'x at 958-59 (stating that the fact that the officer used an expletive during the arrest and a general assertion by the plaintiff that there exists sufficient evidence to create a question of fact about whether the defendant officers acted with actual malice is insufficient to satisfy the "demanding standard" of showing actual malice). Accordingly, Defendant Etzel's motion for summary judgment is **GRANTED** and Plaintiffs' state law claims against Defendant Etzel are **DISMISSED**.[13]

---

[13] Plaintiffs' claims for loss of consortium are derivative of their state law claims. Accordingly, as Plaintiffs'

### D. Plaintiffs' Claims for Punitive Damages

Although Defendant Etzel did not specifically move to dismiss Plaintiff's claims for punitive damages, for the sake of clarity, the Court finds that, because this Court has dismissed Plaintiffs' § 1983 and state law claims against Defendant Etzel, any derivative claims for punitive damages must be dismissed. See Lewis, 293 Ga. App. at 750, 667 S.E.2d at 719 ("Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails."); Butler, 2018 WL 6729647, at *7.

## CONCLUSION

For the foregoing reasons, Defendants City of Port Wentworth, Phinney, and Libby's Motion for Summary Judgment (Doc. 28) is **GRANTED** and Defendant Etzel's Motion for Summary Judgment (Doc. 32) is **GRANTED**. As a result, Plaintiffs' claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this **26**ᵗʰ day of September 2019.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

claims for false arrest and aggravated assault and battery fail, Plaintiffs' claims for loss of consortium against Defendant Etzel are also **DISMISSED**.